UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------
DIONICIO PEREZ,

                                Petitioner,

            -v.-                                             9:04-CV-327
                                                          (DNH)(GJD)

MICHAEL PERROTT, Superintendent,

                                Respondent.
------------------------------------------------------------------------------
DIONICIO PEREZ[1]
Petitioner, *pro se*
STEVEN H. SCHWARTZ, Assistant A.G. for Respondent

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the
Honorable David N. Hurd, United States District Judge pursuant to 28 U.S.C. § 636(b)
and Local Rules N.D.N.Y. 72.3(c).

      Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254, challenging a judgment of conviction from the Schenectady County Court.
On May 5, 1997, petitioner pled guilty to Criminal Sale of a Controlled Substance,
Third Degree.  Petitioner was sentenced on July 21, 1997 to an indeterminate term of
four and one-third to thirteen years imprisonment.  Petitioner did not complete a direct
appeal of his conviction, despite several extensions of time to do so.

      Petitioner filed a motion to vacate the judgment pursuant to N.Y. CRIM. PROC.

---

[1] According to the New York State Department of Correctional Services website,
petitioner was released in July of 2004.  Petitioner has not filed a change of address with the
court or otherwise advised the court of his status.  Petitioner's release status is unclear, both
because of his immigration status and because he may be on parole.  Therefore, the court has
handled the petition as though petitioner is still "in custody."

LAW § 440.10 which was denied by the Schenectady County Court in an oral decision on April 19, 1999.  *People v. Perez*, Transcript of Hearing and Decision (Exhibit 14).[2] Although it appears that petitioner's counsel intended to consolidate petitioner's direct appeal with the appeal of the denial of the section 440.10 motion, on September 27, 1999, counsel made an application to withdraw the appeal.  The Appellate Division, Third Department granted the application to withdraw on April 15, 2002. Exhibit 17, *People v. Perez*, (3d Dep't April 15, 2002).

Petitioner made a motion to reinstate his appeal on May 2, 2003 which was denied by the Appellate Division on June 17, 2003. (Exhibit 21).  Petitioner then filed a motion for reargument of the denial which was denied on October 2, 2003. (Exhibit 27).  Petitioner sought leave to appeal to the New York Court of Appeals from both the denial of the motion to reinstate as well as the motion to reargue.  The New York Court of Appeals dismissed petitioner's applications in two separate decisions, dated December 4, 2003. *People v. Perez*, 1 N.Y.3d 577, 807 N.E.2d 907 (2003)(Exhibits 30, 31).  The New York Court of Appeals found that "the order[s] sought to be appealed [are] not appealable under Criminal Procedure Law, section 450.90(1)." *Id.*

Petitioner raises the following grounds in support of his petition:

---

[2] Local Rule 72.4(d) outlines the respondent's obligation to identify documents in the state court records.  Unfortunately, in this case, respondent's counsel has not done so. Several of the documents contain a variety of other unlisted documents attached and few have any page numbering whatsoever.  To remedy this cumbersome problem, the court has used the numbering of the documents as listed in respondent's answer (Dkt. No. 6) as "exhibit" numbers and has paginated each exhibit separately.  When citing to the state court records in the Recommendation, the court will identify the exhibit number and the page number within that exhibit when applicable.

(1)     Petitioner's plea was involuntary.

(2)     Petitioner was unlawfully arrested.

(3)     The prosecutor engaged in misconduct.

(4)     Petitioner was denied the effective assistance of trial counsel.

Respondent has filed an answer and memorandum of law, together with the pertinent state court records.[3] (Dkt. No. 6).  Petitioner filed a reply. (Dkt. No. 16).  For the following reasons, this court will recommend denial of the petition.

**DISCUSSION**

1.    <u>**Facts**</u>

In early September of 1996, New York State Police Officers conducted at least two undercover purchases of narcotics from an Hispanic male.  On September 6 and again on September 13, 1996, an undercover officer entered Rody's Bar in Schenectady, New York and purchased drugs from an individual nicknamed "Kiko." (Exhibit 12 at pp.10-11 - Buy Sheets).  Field test results were positive for cocaine[4] and crack cocaine.[5]

The undercover officer wrote reports on both purchases, including a physical description of the suspect.  Both reports identified "Kiko" as the seller, and the physical description of the seller was the same in both reports, except for the description of the suspect's facial hair.  On September 6, the report indicated that the

---

[3] The state court records are listed on pages 3-5 of respondent's answer. (Dkt. No. 6).

[4] September 6, 1996 purchase. (Exhibit 12 at p.11).

[5] September 13, 1996 purchase. (Exhibit 12 at p.10).

suspect had a mustache ("must"), while on September 13, the report indicated that the suspect had a goatee ("g-tee"). The reports also differed on the identity of "Kiko." The September 6 report identified the seller as Ignacio Perez (Exhibit 12 at p.11), and the September 13 report identified the seller as "Dominsio"[6] Perez. (Exhibit 12 at p.10). Both reports listed the suspect's date of birth as August 12, 1963.[7] The September 13 report stated that "Kiko then proceeded to write his name and address in the Dom. Rep. for W/M name Gary. (Dominsio Perez)." (Exhibit 12 at p.11).

The undercover officer delivered the drugs purchased from Kiko to the New York State Police Headquarters Crime Laboratory. The laboratory issued two reports identifying the drugs as cocaine and crack cocaine. (Exhibit 1[8] at pp.5-7). In the lab report dated September 18, 1996, the suspect was listed as "Ignacio 'Kiko' Perez." (Exhibit 1 at pp.5-6). In the lab report, dated September 17, the suspect was identified as "Ignacio Perez aka Dominsio." (Exhibit 1 at p.7).

On September 19, 1996, a grand jury indicted "Dionicio Perez a/k/a/ Dominsio Perez a/k/a Ignacio Perez a/k/a/ Kiko" for two counts of Criminal Sale of a Controlled Substance, Third Degree; two counts of Criminal Possession of a Controlled Substance, Third Degree; and one count of Criminal Possession of a Controlled Substance, Seventh Degree. (Exhibit 1)(Indictment). Petitioner was arrested on

---

[6] Petitioner's name is misspelled in various state court documents. Petitioner's name is Dionicio.

[7] Petitioner's date of birth is February 25, 1966. (Exhibit 13 at p.28).

[8] Exhibit 1 is the petitioner's indictment. The laboratory reports are attached to the indictment.

November 1, 1996.[9]

On November 18, 1996, the Schenectady County District Attorney was advised that Dionicio Perez had a brother, Ignacio Perez. (Exhibit 2).  This information was contained in an "Inter-Departmental Correspondence Sheet" written for petitioner's file. (Exhibit 2).  The subject of this report is listed as "Background Information . . ." *Id.*  The report states that Dionicio and his brother Ignacio were both involved in the drug business, bringing drugs "from NYC every couple of weeks and selling until they ran out, then getting more." *Id.* at p.1  It is clear from the report that the prosecutor was aware of both brothers, and that Ignacio had pending charges "related to Dionicio's business." *Id.*  The report also states that petitioner's English was "excellent, although [he] claims to need an interpreter." *Id.*

In December of 1996, petitioner's counsel, Steven X. Kouray, Esq., made an omnibus motion which included a motion to dismiss the indictment, alleging *inter alia*, that "the identity of the defendant was never clearly established." (Exhibit 3 at p.4).  The Schenectady County Court found that the indictment was based on sufficient evidence. (Exhibit 5)(*People v. Perez*, Decision and Order dated Jan. 17, 1997).  On May 5, 1997, petitioner accepted a plea agreement and admitted that he sold drugs on September 6, 1996. (Exhibit 13 at pp.12-14)(Plea Hearing Transcript (PHT) at 9-10).  Petitioner pled guilty to one count of Criminal Sale of a Controlled Substance, Third Degree. (Exhibit 13 at p.12)(PHT at 9).  Petitioner signed a waiver of

---

[9] Pre-Sentence Investigation Report, June 23, 1997 (Exhibit 13 at p.28)(a portion of the report is attached to the District Attorney's response to petitioner's 1999 motion to vacate).

his right to appeal as part of the plea agreement. (Exhibit 6).  During the plea proceedings, petitioner was represented by retained counsel, James Long, Esq. (Exhibit 13 at p.4).

On November 5, 1997, petitioner made a pro se motion to extend his time to appeal in the Appellate Division, Third Department. (Exhibit 7 at p.1).  In his motion, petitioner stated that his attorney failed to file a notice of appeal, and because petitioner had been moved to several correctional facilities, he had been unable to maintain contact with Mr. Long. (Exhibit 7 at p.2).  James Long, Esq. filed an affidavit in support of petitioner's pro se request, stating *inter alia,* that Attorney Long did not believe in requiring defendants who plead guilty to waive their right to appeal. (Exhibit 8 at p.2, ¶¶ 6-7).  The Appellate Division granted petitioner's request. *See* Exhibit 9.  On February 6, 1998, petitioner filed his notice of appeal and request to proceed as a poor person. (Exhibit 9 at pp.2-6).

On March 13, 1998, the Appellate Division granted petitioner's motion to proceed as a poor person. (Exhibit 10).  On October 13, 1998, Kevin A. Burke, Esq. was assigned to represent petitioner, and on November 30, 1998, Attorney Burke asked for an additional extension of time to perfect the appeal. (Exhibit 11).  On March 24, 1999, Attorney Burke made a motion to vacate petitioner's conviction in the Schenectady County Court pursuant to N.Y. CRIM. PROC. LAW § 440.10. (Exhibit 12).  Attorney Burke based petitioner's motion on "newly discovered evidence"; prosecutorial misconduct; and ineffective assistance of trial counsel because neither the attorneys from the Public Defender's Office, nor retained counsel, Mr. Long,

6

raised the issue of petitioner's misidentification. *Id.*

A hearing on the motion was conducted on April 19, 1999 in Schenectady County Court. (Exhibit 14)(Transcript of Hearing).  After the hearing, the court denied petitioner's motion in an oral decision, finding that there was no newly discovered evidence. (Exhibit 14 at pp.12-13).  The court also found that petitioner's plea was voluntary, and that trial counsel's decision not to pursue the identification issue was strategic in light of the plea bargain. (Exhibit 14 at pp.12-13).

On June 15, 1999, Attorney Burke moved for another extension of time to appeal to the Appellate Division. (Exhibit 15).  It is clear from Attorney Burke's letter that he wished to consolidate petitioner's direct appeal with the appeal from the recently denied section 440.10 motion. (Exhibit 15 at p.2).  Counsel stated that the extension was being requested because "the motion to vacate . . . was denied and I am waiting for transcripts from that hearing to include them in the present Appeal.  My client directed me to make this request on his behalf." *Id.*

On September 27, 1999, Attorney Burke wrote to the Appellate Division asking to withdraw petitioner's appeal. (Exhibit 16).  Attorney Burke stated that he was "authorized and directed by my client" to seek the withdrawal.  The letter indicates that a copy of the letter was sent to petitioner.[10] *Id.*  On April 15, ***2002*** the Appellate

---

[10] It is unclear why the respondent in this case did not raise a statute of limitations argument. The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes a one year period of limitations which runs from the latest of one of four different circumstances. 28 U.S.C. § 2244(d)(1). These circumstances include: the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; the date upon which an unconstitutional State-created impediment to filing a petition was removed if the petitioner was prevented from filing because of that impediment; the date upon which the

Division issued an order discontinuing the appeal. (Exhibit 17).  On December 12, 2002, petitioner wrote a letter to the Clerk of the Third Department, inquiring about the "status" of his appeal. (Exhibit 18).  In that letter, petitioner stated that "I was assigned a Counsel to help me with my appeal, but due to a release from the prison system in 1999,[11] I had lost all contact with him and the paper work [sic] with my indictment No." *Id.*

By letter dated December 20, 2002, the Appellate Division, Third Department informed petitioner that his appeal had been withdrawn by order dated April 15, 2002, upon the request of petitioner's counsel, Kevin Burke, Esq. (Exhibit 19).  On May 2, 2003, petitioner made a motion to reinstate his appeal in the Third Department.[12] (Exhibit 23 at pp.13-24).  In this motion, petitioner stated that he never intended to

---

constitutional right asserted was recognized and made retroactive by the Supreme Court; or the date upon which the factual predicate for petitioner's claim could have been discovered by the exercise of due diligence. 28 U.S.C. 2244(d)(1)(A)-(d)(1)(D).

Although the respondent in this case did not argue that this petition was barred by the statute of limitations, this court must point out that such an argument may well have been successful. The United States Supreme Court has recently stated that the court may consider the statute of limitations even if the respondent does not argue for dismissal on that basis. *Day v. McDonough*, 547 U.S. 198, 209 (2007).  Other courts have stated that in order to consider the statute of limitations *sua sponte*, the court must afford the petitioner a chance to respond to that issue. *Downing v. Lance*, 07-Cv-582, 2008 U.S. Dist. LEXIS 657, *1-2 (D. Conn. Jan. 4, 2008). Because petitioner in this case has failed to update his address, it would be impossible for the court to afford him notice and an opportunity to oppose the finding.  Thus, the court will not engage in a complicated statute of limitations analysis or base its recommendation the untimeliness of the petition.

[11] It is completely unclear what petitioner means by this statement.

[12] In addition to explaining why the appeal should be reinstated, petitioner stated several of the arguments upon which he would have based his appeal, including involuntary plea, ineffective assistance of counsel, and his allegedly mistaken reliance upon an interpreter during the plea proceedings. (Exhibit 23 at pp.19-22).

withdraw his appeal.  Petitioner explained that he relied on a relative to communicate with Mr. Burke because of petitioner's limited ability to communicate in English. (Exhibit 23 at p.17).  Petitioner acknowledges that Mr. Burke had relied upon the contents of a letter from one of petitioner's relatives, stating that petitioner wished to withdraw his appeal. (Exhibit 23 at p.18).  Petitioner claimed that he did not know the contents of the letter until counsel himself produced a copy of the letter in a related proceeding conducted by the Third Department Committee on Professional Standards.[13]  On June 17, 2003, the Appellate Division denied the motion to reinstate petitioner's appeal. (Exhibit 21).

On August 18, 2003, petitioner made a motion to reargue the denial of the motion for reinstatement. (Exhibit 23).  The District Attorney opposed the motion, based only upon the voluntary withdrawal of the appeal by counsel. (Exhibit 25 at pp. 1-2).  On October 2, 2003, the Third Department denied petitioner's motion for reargument. (Exhibit 27).  Petitioner applied to the New York Court of Appeals for leave to appeal the denial of reinstatement and the denial of reargument. (Exhibits 28 and 29).  On December 4, 2003, the New York Court of Appeals denied leave to appeal both denials because neither denial was an "appealable order" under N.Y. CRIM. PROC. LAW § 450.90(a). (Exhibits 30 and 31).

## 2.    **Exhaustion**

The law is well-settled that prior to bringing a petition for writ of habeas corpus

---

[13] According to petitioner, he filed a misconduct complaint with the Committee. (Exhibit 23 at p.18).  However, in his motion to reinstate the appeal, petitioner conceded that "[the request to withdraw the appeal] does not appear to indicate any unprofessional conduct by [counsel]." *Id.*

pursuant to 28 U.S.C. § 2254, a petitioner must exhaust his state court remedies with respect to each claim presented in his federal application for habeas relief. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The petitioner must "fairly present" his claims in each appropriate state court, alerting the court to the ***federal nature*** of the claim. *Id.* (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).  The petitioner must have informed the state court of ***both*** the factual ***and*** legal basis of the claims that he is attempting to bring in federal court. *Id.*  To fulfill the exhaustion requirement, petitioner's claims must have been presented to the highest state court available for review of those claims. *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert denied*, 514 U.S. 1054 (1995).

In this case, petitioner has failed to exhaust any of the claims that he raises in this petition.  Prior to petitioner's direct appeal, he filed his section 440.10 motion.  Although he received a decision on the merits of the section 440.10 motion, and petitioner's counsel intended to consolidate petitioner's direct appeal with the appeal from the section 440.10 motion, neither appeal was perfected.  Petitioner's counsel withdrew the appeal by letter dated September 27, 1999. (Exhibit 16).  The letter indicates that a copy was sent to petitioner. *Id.*  Although petitioner attempted to reinstate his appeal and to re-argue the denial of reinstatement, the Appellate Division denied both applications and therefore, never had the opportunity to consider the substance of any of petitioner's claims.

The fact that petitioner attached various arguments to his motion to reinstate that he would have made on his appeal, does not change this court's finding.  The

10

motion to reinstate was based on the claim that his attorney erroneously withdrew the appeal(s), and the Appellate Division would have considered that argument in denying the motion. The court would only have reached the substantive arguments if reinstatement had been granted. The New York Court of Appeals then **dismissed** petitioner's attempt to appeal from the denial of the motion to reinstate and the motion to reargue. (Exhibits 30, 31). The New York Court of Appeals stated in its decisions that neither order was appealable. *Id.* The Court of Appeals did not consider any substantive arguments made by petitioner. Thus, none of petitioner's claims are exhausted.

If petitioner has failed to exhaust his state court remedies, but no longer has remedies available in state court, then the claims are "deemed" exhausted, but may also be barred by procedural default. *Bossett v. Walker*, 41 F.3d at 828 (citing *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991)). A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez*, 510 F.3d 382, 2008 U.S. App. LEXIS 36, *25-26 (2d Cir. Jan. 3, 2008)(quotation omitted). With this background, the court will turn to an analysis of each of petitioner's claims.

### 3.   Involuntary Plea

In this case, petitioner first claims that his plea was involuntary because the **court interpreter** never explained the consequences of the plea, and the interpreter just

encouraged petitioner to "say yes to all questions." Petition at ¶ 12(a) (Dkt. No. 1).

Petitioner also appears to blame the interpreter for "inducing" him to plead guilty to

avoid a higher sentence. *Id.* Although petitioner's counsel did not specifically raise

the issue of involuntary plea in the papers filed in support of the motion to vacate, at

the hearing the voluntary nature of his plea was discussed at the prompting of the

court. (Exhibit 14 at p.4). The prosecutor's papers interpreted petitioner's argument as

raising a voluntariness issue. (Exhibit 13 ¶ 6).

At the hearing, petitioner's counsel stated that "[petitioner] feels that he was

coerced into taking this plea." (Exhibit 14 at p.4). The essence of petitioner's claims is

that he is not the individual who was indicted for this crime, and that he always

wished to have a hearing regarding identity, but because of his ineffective counsel and

faulty interpreter, he pled guilty instead. (Exhibit 12 at p.3). The court found on the

merits that petitioner's plea was voluntary and his counsel was not ineffective in

failing to pursue the identification issue. (Exhibit 14 at pp.12-14). The court found

that the identification issue was not "new evidence" and the discrepancy between the

names on the buy sheets was information that was known to the parties and could have

been used in an argument based on the "weight of the evidence" or to impeach or

undermine the prosecutor's witnesses if the case had gone to trial. *Id.* at p.12.

Thus, petitioner's involuntary plea claim was raised and considered in the

section 440.10 motion, however, because there was no appeal of that motion, the

claim is unexhausted. The issue then becomes whether petitioner can now return to

state court to raise his involuntary plea claim. If there are no remedies available to

petitioner, the court may "deem" the claim exhausted and proceed to an analysis of procedural default.  For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to the state court if it is clear that the state court would hold the claim procedurally barred. *Grey*, 933 F.2d at 120 (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)).

Petitioner in this case cannot go back and attempt to finish his direct appeal.  He has already attempted to reinstate his appeal, and his motion was denied by the Appellate Division.  He also cannot appeal the denial of the section 440.10 motion for the same reason.[14]  Petitioner's only avenue to raise this claim would be to file a successive section 440.10 motion.  There is no time limit within which an individual must bring a section 440.10 motion.  The statute specifically states that a motion to vacate may be made "[a]t any time after the entry of a judgment." N.Y. CRIM. PROC. LAW § 440.10(1).

It is also contemplated by the statute that more than one motion to vacate is not prohibited.  However, the statute provides that the court "may" deny a motion to vacate when the ground or issue was previously determined on the merits in a prior motion or proceeding, other than a direct appeal of the action. *Id.* § 440.10(3)(b).  The statute further provides that the court "may" deny a motion to vacate when the petitioner raises a claim that he could have raised in a prior motion to vacate, but unjustifiably failed to do so. *Id.* § 440.10(3)(c).  Finally, the court "must" deny a

---

[14] As stated above, the direct appeal and the appeal of the section 440.10 motion were to be heard together.

motion to vacate when the issue could have been raised on direct appeal, but petitioner unjustifiably failed to do so. *Id.* § 440.10(2)(c).

Since petitioner did raise his involuntary plea issue in a prior motion to vacate, an attempt to return to state court to raise the issue again so that he could exhaust his remedies would be met by section 440.10(3)(b).  Because a denial based on section 440.10(3)(b) is "discretionary", the question becomes whether this rule is sufficient for this court to hold that as a matter of state law, petitioner could not return to state court.

In *Reyes v. Phillips*, 02 Civ. 7319, 2005 U.S. Dist. LEXIS 19488, *14-18 (S.D.N.Y. Sept. 6, 2005), the court held that because section 440.10(3)(b) was discretionary, the court was ***not*** prepared to hold that petitioner could not return to file a second section 440.10 motion. *Id.*  The court notes that more recently, the Second Circuit has held that the statutory grant of discretion in section 440.10(3)(b) does not prevent the section from operating as a procedural bar. *Murden v. Artuz*, 497 F.3d 178, 193 (2d Cir. 2007), *cert. denied sub nom. Murden v. Ercole*, 2008 U.S. LEXIS 1023 (Jan. 14, 2008).  However, in *Murden*, the court was faced with a "decision" from the state court, basing its denial of a subsequent motion on a discretionary procedural default. *Id.*  The issue in *Murden* was the adequacy of the procedural default, and whether state rule was "firmly established and regularly followed." 497 F.3d at 192.

In this case, this court doubts whether the state court would consider a second section 440.10 motion by petitioner since the appeal from the first section 440.10 motion was withdrawn, and petitioner already received a hearing on the voluntariness

of his plea.  In *Ellman v. Davis*, 43 F.3d 144, 148 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118 (1995), the court held that a petitioner's voluntary withdrawal of his appeal under the circumstances presented, resulted in both a failure to exhaust and a procedural bar.  *Ellman* is distinguishable because the petitioner in *Ellman* had already perfected a direct appeal, raising his claims in state court.[15] 43 F.3d at 148.  In this case, it is clear that petitioner's claim could have been, and was, brought under section 440.10.  Thus, this court cannot say with certainty, under the circumstances presented here, that petitioner could not return to state court, and thus, this claim would not be procedurally defaulted.

This analysis leaves the court with an unexhausted claim.  The habeas statute provides, however, that an application for habeas corpus may be denied on the merits notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).  Although the Second Circuit has not specifically articulated a standard, lower courts have discussed two standards to determine whether a claim should be dismissed on the merits, notwithstanding the failure to exhaust. *See Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 n.4 (W.D.N.Y. 2007)(citing cases).

A majority of lower courts use the "patently frivolous" standard, while a minority of courts use a "non-meritorious" standard, dismissing a claim when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Id.*

---

[15] In such a case, any attempt by petitioner to raise the claim or claims in a section 440.10 motion to vacate would have been met by a ***mandatory*** dismissal under section 440.10(2)(c). This mandatory dismissal applies to claims that could have been raised on direct appeal, but were not raised due to an unjustifiable failure by petitioner. N.Y. CRIM. PROC. LAW § 440.10(2)(c)

(citing *inter alia Naranjo v. Fillion*, 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, *30 (S.D.N.Y. April 16, 2003)(patently frivolous standard); *Basnight v. Keane*, 99-CV-5907, 2001 U.S. Dist. LEXIS 11155, *14-15 & n.1 (E.D.N.Y. July 31, 2001)(non-meritorious standard)).  In finding that a "non-meritorious" standard applied, the court in *Basnight* cited the Supreme Court decision in *Duncan v. Walker*, 533 U.S. 167, 183 (2001).  In *dicta* from *Duncan* the Supreme Court stated that "the AEDPA gives a district court the alternative of simply denying a petition containing **unexhausted but nonmeritorious claims**." *Id.* (emphasis added).  In this case, the court finds that petitioner's involuntary plea claim may be dismissed on the merits under either standard, notwithstanding petitioner's failure to exhaust the claim in the state courts.

The well-established standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)(quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Where a defendant is represented by counsel at the plea, and enters the plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases, *Id.* (citations omitted).

The constitutional standard for effective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668, 704 (1984). *See Hill*, 474 U.S. at 57-58.  In order to show that counsel was ineffective during the plea process, petitioner must establish that counsel's representation fell below an "objective standard of reasonableness," and that there is a reasonable probability that but for counsel's

16

unprofessional errors, the petitioner would not have pled guilty, but would have insisted on going to trial. *Hill*, 474 U.S. at 58-59.

A review of the state court records in this case, including the plea and sentencing transcripts, together with the hearing transcript from petitioner's motion to vacate shows that petitioner's plea was voluntary, and his attorney was not ineffective for advising petitioner to accept the plea.  Petitioner makes much of the issue of "mistaken identity," claiming that he was not the individual who was indicted for the crime.  Petitioner also states that his attorney should have investigated petitioner's claims of innocence and made more pretrial motions to determine identity.

The court would point out that petitioner's counsel, Steven Kouray[16] made an omnibus motion for various forms of relief, including a dismissal of the indictment, based *inter alia* on the claim that "the identity of the defendant was never clearly established." (Exhibit 3 at p.4).  The prosecutor's response to the motion also included a picture of both Dionicio Perez and Ignacio Perez. (Exhibit 4 at p.4).  The trial court reviewed the Grand Jury transcript and found sufficient evidence to indict Dionicio Perez. (Exhibit 5 at p.2).  Thus, although petitioner claims that the mistaken identity issue was never brought before the court, the papers contradict petitioner's allegations.

At the plea hearing, Attorney Long stated that after "several weeks of negotiations" with the prosecutor, the petitioner was ready to enter a plea in exchange for a sentence of four and one third to thirteen years. (Exhibit 13 at p.5).  Interestingly,

---

[16] Attorney Kouray was assigned counsel and represented petitioner at the initial stages of the proceedings.  By the time of the plea, petitioner was represented by retained counsel, James Long.

counsel also stated that petitioner was "ready to give a sworn statement that he does not know anything about the drugs that were found on the person and in the vehicle occupied by *Ignacio* Perez on . . . September 20 of 1996." *Id.* at pp.5-6 (emphasis added). Clearly, there was a discussion regarding Ignacio Perez, who according to the investigator's report happened to be petitioner's brother. (Exhibit 2 at p.1). The court also notes that the investigator's report also states that petitioner's English was "excellent" although he claimed to need an interpreter. *Id.*

Part of the plea bargain involved the prosecutor's promise not to pursue two drug sales by petitioner that occurred *prior to* the charged sales. (Exhibit 13 at p.7). Additionally, petitioner only pled guilty to *one* of the two sale counts with which he was charged. At one point during the plea, petitioner expressed some doubts, and the court made sure that the interpreter told petitioner that if he did not plead guilty he was facing a sentence of sixteen and two thirds to fifty years. (Exhibit 13 at p.10). The interpreter then stated that petitioner insisted upon knowing why he could not "get another hearing, because he is not sure about it." *Id.* Based upon petitioner's expressed uncertainty, the court stopped the plea proceedings and stated petitioner could go forward with the trial. *Id.* The trial judge stated that he would conduct the pre-trial hearings, and that a jury would be selected that afternoon. *Id.*

After a recess, the court was ready to go forward with the trial, but Mr. Long stated that after spending some more time with the interpreter, petitioner understood the proceedings, and wished to go forward with the plea. *Id.* at p.11. The court then engaged in a colloquy with petitioner through the interpreter, carefully asking

18

petitioner whether he committed the crime to which he was pleading guilty and asked him whether anyone was forcing him to do so. *Id.* at 12-16.  Petitioner admitted the elements of the crime. *Id.* The waiver of appeal was translated into Spanish so that petitioner would understand what he was signing. *Id.* at p.15.

The plea proceeding was on May 5, 1997, and petitioner's sentencing was held on July 21, 1997. (Exhibit 13 at p.8).  At the sentencing, petitioner addressed the court ***in English*** and stated that he was addicted to crack and heroin, and that he was "sorry for this crime ***I did commit*** . . . ." (Exhibit 13 at 24)(emphasis added).  Petitioner also requested that he be allowed to be deported as soon as possible. *Id.*  It does not appear that these statements were being made by an individual who pled guilty because he was forced to do so or because he did not understand the proceedings in his case.[17] His spoken English was quite good, given the fact that he implied that he did not speak English at the time of the plea, which occurred two months prior to sentencing.

The judge who handled the motion to vacate[18] held a hearing, and he determined that plaintiff's plea was voluntary.  During this hearing there was a discussion of the identity issue and the discrepancy in the names contained in the police records.

---

[17] The court also notes that the portion of petitioner's pre-sentence report that has been attached to Exhibit 13 contains "Defendant's Statement." (Exhibit 13 at p.28).  The report states that "[t]he defendant admits to selling drugs on two separate occasions to the undercover officer as police information alleges.  However, the defendant implied that it was the officer and his confidential informant who encouraged him to make those sales, stating that 'they kept insisting.'" *Id.*  Petitioner also stated that he only sold drugs "two times" and that he used the money to support his own drug habit. *Id.*  Once again, these statements do not sound like they are being made by an individual who was not guilty of the crimes charged.

[18] The judge who handled the motion to vacate was not the same judge before whom petitioner pled guilty.

19

(Exhibit 14 at pp.2-4).  At the hearing on the motion to vacate, petitioner alleged that he was out of the country at the time of the crime. (Exhibit 14 at p.7).  The court found that the plea was proper, counsel was not ineffective, and there was no "new evidence" that would allow the court to vacate the guilty plea. (Exhibit 14 at pp.12-14).  Although petitioner claims that he pled guilty because he was not receiving "the hearings" to which he was entitled, as stated above, the trial judge stopped the plea proceedings and stated that he was ready to proceed with pretrial hearings. Petitioner's claim that he was "denied" hearings or that his counsel failed to ask for hearings is frivolous.

It is well-settled that a guilty plea is not involuntary simply because it was motivated by the desire to accept a lesser sentence and avoid the uncertainty of getting a lengthier sentence if the defendant is convicted after a trial. *Brady v. United States*, 397 U.S. 742, 751 (1970).  Most plea bargains involve accepting a lesser sentence than would be available under the law or pleading to fewer counts than charged in the indictment.  It has been held that statements made at a plea allocution carry a "strong presumption of veracity" that is difficult to challenge in a collateral proceeding based upon "bald statements" contradicting what was said during the plea. *Gomez v. Duncan*, 02 Civ. 846, 2004 U.S. Dist. LEXIS 898, *61-62 (S.D.N.Y. Jan. 27, 2004)(citations omitted).

In this case, petitioner's own statements belie his claim of innocence.  The statements at the plea proceeding as well as his statement to the judge at sentencing that he was guilty of the crime to which he pled guilty show that petitioner's claim that

20

he did not understand the proceedings, that his attorney gave him bad advice, and even worse, that the *interpreter* forced him to plead guilty are meritless.

Petitioner also makes a completely conclusory allegation that his attorney failed to represent petitioner properly because of petitioner's race. This was never raised in any court, and petitioner cites *absolutely no basis for this assertion*. This claim too must be dismissed based on frivolousness. Thus, this court recommends dismissal of petitioner's involuntary plea claim, notwithstanding his failure to exhaust state court remedies.

**4.**   **Unlawful Arrest; Prosecutorial Misconduct; and Ineffective Trial Counsel**

It is clear that petitioner did not exhaust any of the remaining claims that he raises in his petition. The "unlawful arrest" claim is unclear, but petitioner may be attempting to state that law enforcement officers arrested the wrong person. Petitioner states that the warrant "did not mention petitioner." This would be consistent with petitioner's claim of mistaken identity. Petitioner next states that the prosecutor failed to disclose favorable evidence. Petitioner does not state what this evidence was or why it would have assisted in finding petitioner "not guilty." Finally, petitioner claims that his trial attorney "failed to ask for preliminary hearings;" failed to investigate petitioner's claim of innocence; and failed to represent petitioner properly because of his race.

As stated above, petitioner's unlawful arrest claim is unclear, but if petitioner alleges that he was not the individual named in the warrant, he could be claiming that law enforcement officers lacked probable cause to arrest petitioner. Any such claim

would be a Fourth Amendment claim. *See Bridgeforth v. Artus*, 475 F. Supp. 2d 261, 266 (W.D.N.Y. 2007). To the extent that petitioner is attempting to raise some sort of Fourth Amendment claim, it would be barred by *Stone v. Powell,* 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that a Fourth Amendment claim is not cognizable where the state has provided an opportunity for full and fair litigation of that claim. *Id*. The Second Circuit has held that all that is required is that the state afford the petitioner an "opportunity" to challenge the alleged violation. *Capellan v. Riley*, 975 F.2d 67, 69-71 (2d Cir. 1992)(citing *Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977)).

The Second Circuit concluded that review of Fourth Amendment claims would be precluded unless either the state provided no mechanism for redress of a Fourth Amendment claim or if the state provided a mechanism, but petitioner was prevented from utilizing it due to an "unconscionable breakdown in the underlying process." *Id*. (citation omitted). The "opportunity" is the key factor, and it is irrelevant that petitioner did not take advantage of it. *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). New York provides an opportunity for Fourth Amendment challenges in N.Y. CRIM. PROC. LAW § 710.10 *et seq*.

Petitioner cannot claim that the state did not afford the opportunity for a challenge to his arrest. To the extent that petitioner raises the unlawful arrest as part of the argument that there was mistaken identity[19] in this case, the court would point

---

[19] The court also notes that the warrant for petitioner's arrest did contain petitioner's correct name, together with all of his aliases. (Exhibit 13 at p.13).

out that petitioner's guilty plea bars him from raising any alleged deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Bridgeforth*, 475 F. Supp. 2d at 267 (citing *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.), *cert. denied*, 517 U.S. 1147 (1966)).  Petitioner may only attack the voluntariness of his plea by showing that his counsel's advice was not within constitutionally acceptable standards. *Id.*

This court has found above, that petitioner's claim that his plea was involuntary is meritless, thus, any other grounds for review raising constitutional claims that arose prior to the entry of the guilty plea are barred.  This bar extends to petitioner's unlawful arrest claim and his prosecutorial misconduct claim.  This bar also extends to petitioner's claim that his attorney did not ask for pre-trial hearings to the extent that it is a separate claim from petitioner's allegation that his plea was involuntary because he was not afforded the proper pre-trial hearings.  In any event, petitioner's claim that his attorney did not ask for pre-trial hearings is belied by the attorney's omnibus motion and the fact that the court stopped the plea proceedings and told petitioner that he would get his pre-trial hearings prior to jury selection.  Petitioner elected to plead guilty instead.  Thus, petitioner's claims of unlawful arrest, prosecutorial misconduct, and ineffective counsel are barred by his voluntary guilty plea.


**5.**   **Certificate of Appealability**

The court notes that an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254 may only be taken upon the issuance of a certificate of

appealability. 28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability may be issued only if the applicant has made a substantial showing of a denial of a constitutional right. *Id.* § 2253(c)(2). *See Miller v. Cockrell*, 537 U.S. 322 (2003).  Because this court has found that the claims raised by petitioner in this case do not make a substantial showing of the denial of a constitutional right, the court will recommend denial of a certificate of appealability.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the petition be **DENIED and DISMISSED**, and it is further

RECOMMENDED, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  These objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: March 3, 2008

_____
Hon. Gustave J. DiBianco.
U.S. Magistrate Judge